1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

AMAZON.COM SERVICES LLC, a Delaware
limited liability company,

9

Plaintiff,

10

v.

11

PARADIGM CLINICAL RESEARCH
INSTITUTE, INC., a California corporation;
RAMPRASAD DANDILLAYA, M.D., an
individual; JUAN JESUS ROJAS DE BORBON,
an individual,

12
13
14

Defendants.

15

No.  2:21-cv-753

**COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF**

**Jury Trial Demanded**

16

## COMPLAINT

17     Plaintiff Amazon.com Services LLC ("Amazon") brings this action against Defendants

18 Paradigm Clinical Research Institute, Inc. ("Paradigm"), Ramprasad Dandillaya, M.D. ("Dr.

19 Dandillaya"), and Juan Jesus Rojas de Borbon ("de Borbon") (collectively, "Defendants") for

20 damages and other appropriate relief.  Amazon states and alleges as follows:

21     ## INTRODUCTION

22     1.     This is a straightforward breach of contract and fraud case.  Defendants falsely

23 claimed to Amazon that Defendants could supply Amazon's essential workers and customers

24 with disposable medical gloves approved by the U.S. Food and Drug Administration ("FDA")

25 and manufactured by a reputable company.  Relying on these representations, Amazon

26 contracted with Defendants for millions of pairs of gloves and paid Defendants over $10 million

27 in deposits.  The gloves delivered by Defendants were not what Defendants had represented they

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 1

were, nor what the contracts required.  Nonetheless, when Amazon timely canceled the contracts, as was Amazon's right, Defendants refused to provide the required refunds.

2.     Defendants' fraud arose during the early days of the COVID-19 pandemic in the United States when there was a critical shortage of personal protective equipment ("PPE").

3.     Amazon sought FDA-approved gloves to distribute to the hard-working employees who staff Amazon's fulfillment centers, and later, more broadly to Amazon's many customers—including hospitals, medical practices, and state and local governments.  Defendants represented that they had access to then-scarce FDA-approved gloves, manufactured by a well-known and reputable company.  In reliance on Defendants' representations, Amazon agreed to purchase 80 million pairs of gloves for $20 million.

4.     Deviating from its normal payment terms due to the urgency of the situation, and at Defendants' insistence, Amazon paid Paradigm a $10 million deposit for the gloves (50% of the total purchase price).

5.     As it turned out, and as Amazon discovered upon receipt of the first shipment of gloves, Defendants had repeatedly misrepresented the source, qualifications, and nature of the gloves.  The gloves were not manufactured by the stated manufacturer, Rubbermate.  The gloves were not FDA-approved.  The gloves could not be used as Amazon had sought and Defendants had represented.

6.     Fortunately, Amazon discovered Defendants' fraud before the gloves were distributed.  Amazon immediately canceled the orders and demanded that Defendants take back the gloves and refund the money Amazon had paid them.  Defendants refused outright, apparently hoping they could abscond with Amazon's money without any consequences.

7.     Defendants willfully deceived Amazon, and possibly many other buyers, and jeopardized the health and safety of its many essential workers and customers.

8.     Amazon brings this suit to recover damages, including the amounts it has already paid Defendants, and to enjoin Defendants' fraudulent conduct.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 2

**PARTIES**

9.      Amazon is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.

10.     On information and belief, Defendant Paradigm is a corporation organized and existing under the laws of California, having its principal place of business at 23150 Crenshaw Blvd., Torrance, California 90505.

11.     On information and belief, Defendant Dandillaya is an individual who currently resides at 460 N. Sweetzer Ave., Los Angeles, California 90048.  He is a medical doctor and the CEO, Medical Director, and Principal Investigator for Paradigm.

12.     On information and belief, Defendant de Borbon is an individual who currently resides at 438 S. Estate Dr., Orange, California 92869.  At the time of the events giving rise to this suit, de Borbon represented himself to Amazon as an agent of Paradigm.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over Amazon's claims pursuant to 28 U.S.C. § 1332(a).  There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     This Court has personal jurisdiction over all Defendants because they transacted business and committed tortious acts within and directed to the State of Washington, and Amazon's claims arise from those activities.  Defendants affirmatively undertook to do business with Amazon, a company with its principal place of business in Washington, entered into or directed others to enter into purchase agreements with Amazon (the "Purchase Orders"), which provide for jurisdiction in the District Court of the United States, Western Division, State of Washington, [1] and sold nonconforming products to Amazon.  Each of the Defendants committed, or facilitated the commission of, tortious acts in Washington and has wrongfully caused Amazon

---

[1] Section 35 of the Purchase Orders states in relevant part: "Supplier irrevocably consents to the jurisdiction of the courts of the State of Washington with venue in King County and of the District Court of the United States, Western Division, State of Washington."

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 3

1  substantial injury in Washington.

2      15.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part

3  of the events or omissions giving rise to Amazon's Complaint occurred in this judicial district,

4  and because the Purchase Orders require venue in this judicial district.[2]

5                    **FACTUAL BACKGROUND**

6      **A.     Paradigm Claims It Can Satisfy Amazon's Need for Disposable Nitrile
7              Gloves to Protect Essential Workers During the Early Days of the COVID-19
              Pandemic.**

8      16.     After the COVID-19 pandemic began, PPE was in great demand.  Amazon's

9  existing PPE suppliers were struggling to keep up with the demand, and a global shortage of PPE

10  meant Amazon was having difficulty sourcing extra supply to meet its needs.

11     17.     On April 15, 2020, a Seattle-based member of Amazon's Procurement &

12  Sourcing team was introduced to a broker of nitrile gloves named Paradigm and its agent de

13  Borbon (who also went by Jon Rojas).

14     18.     Amazon explained to de Borbon that it needed to obtain a significant amount of

15  FDA-approved nitrile gloves for its employees as soon as possible.[3]

16     19.     For his part, de Borbon claimed that due to the relationships Paradigm had

17  established through its clinical research, it had more connections to established medical glove

18  manufacturers and brands, as well as larger quantities of supply, than most other vendors had.

19     20.     Over the next few days, de Borbon and Amazon negotiated the terms of a

20  prospective sale of nitrile gloves by Paradigm to Amazon.  Notably, de Borbon insisted that

21  Paradigm be paid a deposit of 50% of the total purchase price for the gloves upfront, with the

22  remaining 50% payment to be provided upon delivery of the gloves.

23     21.     Prior to the finalization of any contract to purchase medical products, Amazon

24  requires vendors to submit for review a safety data sheet or "SDS" pertaining to the product.

25

26  [2] *See id.*
27  [3] Nitrile gloves are medical-grade gloves that are generally considered the most functional hand protection products
available due to their superior protection against viruses, chemicals, and other dangers, their resistance to punctures,
their lack of latex, to which many people are allergic, and their longer shelf life.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The SDS is generally comprised of the product manufacturer's name, brand, and factory location; photographs and specifications of the subject product and factory; the manufacturer's FDA registration number; the FDA 510(k)[4] premarket approval number for the product; and additional certificates and registrations which establish that the product complies with various quality standards, such as ISO 9001 (International Organization for Standardization).

22.     Amazon relies on this information to determine that the medical supplies produced by the manufacturer satisfy Amazon's stringent safety standards.  The SDS must be received for any order to be finalized.  Further, the SDS is incorporated into—and therefore becomes part of—the Purchase Order for the product.  *See* Purchase Orders, Sections 3 and 11.[5]

23.     Consistent with Amazon's SDS approval process, and the Purchase Orders, the gloves had to be FDA approved under section 510(k).

24.     Based upon representations, express and implicit, by de Borbon and Paradigm that the gloves they would be supplying to Amazon would meet all of Amazon's requirements, including but not limited to being FDA-approved, made by reputable manufacturers, and complying with all relevant quality standards, Amazon proceeded with its Paradigm order.

**B.      In Reliance Upon Paradigm's Promises, Amazon Issues Two Purchase Orders to Paradigm for the Sale of 80 Million Pairs of FDA-approved Nitrile Gloves for $20 Million.**

25.     In late April 2020, Amazon issued two purchase orders to Paradigm for the sale of

---

[4] 510(k) refers to section 510(k) of the Federal Food, Drug, and Cosmetic Act [21 U.S.C.A. §360, *et seq.*], which outlines the requirements for a premarket submission that is made to the FDA to demonstrate that a medical device to be marketed is as safe and effective (i.e., substantially equivalent) to a legally marketed device.  Until the submitter receives an order (which is typically in the form of a letter from the FDA) declaring a medical device is substantially equivalent to a legally marketed device, the submitter may not market the device.  In general, medical gloves, such as the nitrile gloves at issue in this case, are subject to the requirements of section 510(k) and therefore may not be marketed in the U.S. unless the FDA finds the gloves are substantially equivalent to a similar legally marketed device and states the device can be marketed in the U.S..

[5] Section 3 states: "**Purchase Order**.  The Purchase Order, the PO Terms and Conditions, and any attachments and exhibits, specifications, drawings, notes, instructions and other information, whether physically attached or incorporated by reference (collectively the 'Purchase Order'), constitutes the entire agreement between the Purchaser and the Supplier."

Section 11 states: "**Inspection**.  All specifications, drawings, samples, requirements, descriptions, other materials and plans that relate to the Project are incorporated in this Purchase Order by reference.  Purchaser may inspect the Project at any time, and Supplier will provide reasonable access and facilities for such inspection prior to shipment. No Project will be deemed accepted before final inspection by Purchaser at the specified destination.  Purchaser's inspection, failure to inspect or failure to discover any defect, acceptance or payment will not waive or limit any warranty, relieve Supplier of any obligation hereunder or impair Purchaser's rights or remedies at law or in equity."

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

a total of 80 million pairs of blue nitrile gloves in exchange for a total of $20 million.

26.     Specifically, on April 24, 2020, Amazon issued Purchase Order 2D-03382282 ("PO-82") to Paradigm for 20 million pairs of disposable blue nitrile gloves in exchange for $5,000,000.  Per Amazon policy, the Purchase Order was expressly subject to the terms of Amazon's SDS sheets described above.  On or about May 8, 2020, and prior to delivery of any of the gloves, Amazon prepaid Paradigm 50% of the purchase price for the gloves (i.e., $2.5 million) as a deposit, per the payment terms insisted upon by de Borbon.

27.     And on April 27, 2020, Paradigm and Amazon issued Purchase Order 2D-03387284 ("PO-84") to Paradigm for 60 million pairs of disposable blue nitrile gloves in exchange for $15,000,000.  Again, per Amazon policy, the Purchase Order was expressly subject to the terms of Amazon's SDS sheets.  On or about April 30, 2020, per the payment terms insisted upon by de Borbon, and prior to delivery of any of the gloves, Amazon again prepaid Paradigm 50% of the purchase price for the gloves (i.e., $7.5 million).

**C.     Defendants Submit Fraudulent Safety Data Sheets Regarding the Gloves to Amazon.**

28.     At the time the POs were issued, Paradigm represented that it was still working to locate a manufacturer that had sufficient inventory of conforming gloves to fulfill the Purchase Orders.  However, the parties expressed to each other through various communications that, upon identifying a manufacturer with sufficient supply who passed the SDS approval process, that manufacturer would be incorporated into and become an express term of the Purchase Orders.

29.     On or about May 20, 2020, de Borbon and Paradigm proposed that the gloves Paradigm would provide to satisfy Paradigm's obligations under PO-82 would consist of FDA-approved gloves manufactured by W.A. Rubbermate Co., Ltd ("Rubbermate") and sold under the brand "Skymed."

30.     In this same communication, de Borbon provided a screenshot of the FDA's 510(k) premarket approval database showing Rubbermate's powder-free nitrile gloves.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 6

31.     Amazon requested an SDS for Rubbermate.  In response, de Borbon sent to Amazon a 19-page document entitled "WA [Rubbermate] Document."  The "WA Document" included a letter from the FDA to Rubbermate approving Rubbermate's section 510(k) premarket notification of intent to market the nitrile powder-free gloves.

32.     In reliance upon these materials, Amazon approved the SDS and PO-82 was finalized, with the express term that Rubbermate would be the manufacturer of the gloves identified by that Purchase Order.

33.     As for the gloves covered by PO-84, Paradigm proposed gloves manufactured by VRG Khai Hoan ("VRG"), branded as "V Gloves."  Specifically, on April 29-30, 2020, de Borbon informed Amazon that a glove manufacturer in Vietnam named VRG came "highly recommended" to him by a plastic surgeon friend of his.  de Borbon provided photographs of the V Glove-branded gloves manufactured by VRG along with an FDA registration number, a 510(k) premarket approval number, and other certificates and registrations.  And on May 27, 2020, de Borbon sent photographs of the product packaging, depicting VRG as the manufacturer and V Gloves as the brand of the gloves, that would be sent to satisfy Paradigm's obligations under PO-84.

34.     In reliance upon these materials, Amazon approved the SDS and PO-84 was finalized, with the express term that VRG would be the manufacturer of the gloves identified by that Purchase Order.

    D.    **Paradigm Continuously and Repeatedly Misrepresents the Gloves to Amazon.**

35.     On being selected to become an Amazon vendor, de Borbon and Paradigm made further misrepresentations to Amazon.  On May 21, 2020, in response to routine queries from Amazon, de Borbon again stated that Rubbermate would be the manufacturer of the Skymed-branded gloves under PO-82, and that the gloves were approved pursuant to section 510(k) and certified by the ISO.  He attached the following photo of specifications of the product packaging, which clearly indicates Rubbermate as the manufacturer of the gloves, as well as 510(k) approval

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 7

1 by the FDA.



36.     Under sections 3 and 11 of the Purchase Orders, the above photo was incorporated into PO-82 and the representations reflected in the photo became a term of that agreement.

37.     On May 28, 2020, de Borbon sent Amazon a 38-second video entitled "PCRI [i.e., Paradigm] proof Video," which he claimed to be a "video of our first small shipment in warehouse."  The video depicts a large quantity of cardboard boxes of "Skymed" gloves with the words "Manufactured By: W.A. Rubbermate" printed on the exterior of each box.

38.     On July 6, 2020, at Amazon's request, Paradigm sent a third-party laboratory two packages consisting of 100 nitrile gloves each to ensure that the gloves met Amazon's PPE

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

standards.  To accompany the gloves, Paradigm filled out a sample form spreadsheet entitled "Amazon QA Requisition Form," again representing that the gloves were made in Rubbermate's factory.  Paradigm also provided Amazon with a purported invoice, dated June 10, 2020, from Rubbermate to Paradigm for the sale of 40 million FDA-approved gloves.

39.     In time, Paradigm became much less responsive to inquiries from Amazon and much more evasive.  For example, Amazon repeatedly asked de Borbon to provide basic information reflecting the shipping status of the Rubbermate and VRG gloves (e.g., total supply, shipment date, arrival date, current location, etc.).  de Borbon refused to provide complete responses.  On August 12, 2020, de Borbon told Amazon to communicate directly with the owner of Paradigm, Dr. Dandillaya.

**E.     Paradigm Delivers Approximately 1.5 Million Gloves Manufactured by Sufficiency Economy City Ltd—not Rubbermate—in Violation of PO-82.**

40.     On or about June 24, 2020, Amazon received from Paradigm approximately 1.25 million pairs of what were purported to be nitrile gloves.  Paradigm falsely represented these gloves to be the first shipment of the 20 million gloves manufactured by Rubbermate that Amazon thought it had ordered pursuant to PO-82.

41.     On or about August 17, 2020, Amazon received from Paradigm approximately 296,000 additional pairs of nitrile gloves.[6]  Paradigm represented these gloves to be a second shipment of the 20 million gloves manufactured by Rubbermate that Amazon had ordered pursuant to PO-82.

42.     The outside packaging for both shipments identified the product within as Skymed brand gloves:

---

[6] For simplicity, the Complaint rounds the 1,546,000 total number of pairs of gloves Paradigm delivered to 1.5 million.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax



**F.       Amazon Discovers Paradigm's Fraud**

43.     On or about August 12, 2020, Amazon noticed that the testing laboratory's sample report referenced the gloves' manufacturer as a company called Sufficiency Economy City Ltd ("Sufficiency"), apparently based on the manufacturer printed on the gloves' individual packaging.  Defendants had always represented that the gloves were to be manufactured by Rubbermate, not Sufficiency—a material term of the agreement.

44.     This discrepancy led Amazon to discover that the boxes of gloves within both shipments were not manufactured by Rubbermate; instead, they were manufactured by Sufficiency.  As a manufacturer, Sufficiency had not gone through the SDS process and its 510(k) status was unknown to Amazon.

45.     Investigating further, an Amazon representative visited Rubbermate's website and Facebook page.  On these pages, Rubbermate explicitly stated that it does not produce the Skymed gloves Defendants had provided to Amazon, and warned that "scammers" were attempting to pass off such gloves as Rubbermate.[7]

---

[7] Available at http://warubbermate.co.th/ (last visited May 14, 2021) and https://www.facebook.com/warubbermate/ (last visited May 14, 2021).

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 10

46.     Upon being contacted by Amazon, Rubbermate denied any connection to Skymed or Paradigm.  Specifically, the Rubbermate representative told Amazon:

> [W]e are 100% NOT ASSOCIATED with Skymed.  They have been fraudulently using our certificate copies in the market and claiming that we are the production factory for their products.  Please blacklist Skymed if possible because the origin [o]f their gloves are unauditable and not traceable all the way up to production level records.

47.     Rubbermate officials subsequently confirmed to Amazon that Rubbermate was not aware of and had no relationship with Paradigm, de Borbon, or Dr. Dandillaya, nor has it ever had any such relationship.

48.     When confronted by Amazon with this information, Dr. Dandillaya falsely insisted that W.A. Rubbermate was the manufacturer of the Skymed gloves that Amazon ordered.  He re-sent Amazon the same false documentation that de Borbon had earlier sent to Amazon, thereby repeating and ratifying the misrepresentation.  He also falsely claimed that Skymed had been working with Rubbermate when PO-82 was first issued and only recently had a falling out.[8]

49.     Now alert to Defendants' fraud, on September 22, 2020, Amazon sent a demand letter to Paradigm in which it canceled the entirety of PO-84 pursuant to section 9 of the Purchase Order, which allows the cancellation, with notice, of any order prior to shipment without charge.[9]

50.     Pursuant to Section 9 of the Purchase Order, the demand letter also required Paradigm to retake possession of the 1.5 million gloves Paradigm had delivered under PO-82, and immediately refund all amounts Amazon had already paid.  Despite the fact that Section 9

---

[8] On September 19, 2020, Rubbermate denied Dr. Dandillaya's claim, confirming to Amazon that "we do NOT have or ever had any business dealings with Skymed or Sufficiency Economy Ltd.".   Rubbermate also told Amazon that they believed Skymed was purchasing low-grade gloves in China, repackaging them for sale under the Skymed brand, and using the factory certificates fraudulently to pass the gloves off for sale.

[9] Section 9 states in relevant part: "Purchaser [i.e., Amazon] may terminate or modify all or any portion of this Purchase Order prior to shipment of any Goods or Supplier's [i.e., Paradigm's] commencement of performance of Services at no charge and without liability by giving Supplier written notice of such termination or change. Purchaser may terminate or modify this Purchase Order for any Goods after shipment and prior to Purchaser's acceptance of such Goods, and Purchaser will pay only the shipping expenses for returning such Goods to Supplier's shipping location and incur no further charge or liability."

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 11

gave Amazon the right to refuse to accept the gloves under PO-82 and that Paradigm had never performed under PO-84, Defendants refused to return Amazon's money, thereby breaching the Purchase Orders.

51.     Defendants, through their fraudulent acts, willfully deceived Amazon, and potentially many other buyers, and jeopardized the health and safety of those who were to use the gloves believing they were FDA-approved.  Defendants are liable for all harm caused and must be enjoined from engaging in similar deceptive and fraudulent practices in the future.

## COUNT ONE

### Breach of Purchase Order 2D-03382282 (as to Paradigm)

52.     Amazon repeats and realleges the allegations set forth above as if fully set forth herein.

53.     On April 24, 2020, Amazon issued Purchase Order 2D-03382282 ("PO-82") to Paradigm for 20 million pairs of disposable, blue nitrile gloves in various sizes in exchange for $5,000,000.

54.     The parties agreed to the terms of PO-82, which incorporated, without limitation, attachments and exhibits, specifications, drawings, notes, instructions and other information, whether physically attached or incorporated by reference.  Such materials included, among other things:

- the requirement that the gloves be FDA-approved;
- the specifications, requirements, and other information and materials Paradigm sent Amazon on May 20, 2020 in the document entitled "WA Document," which reflects Rubbermate's FDA 510(k) premarket approval, FDA registration number, and ISO certificates;
- the specifications, descriptions, and other information and materials Paradigm sent Amazon on May 20 and 21, 2020, confirming that Rubbermate was the manufacturer of the gloves purchased under PO-82; and
- the specifications, descriptions, and other information and materials Paradigm

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 12

sent Amazon on May 21 and May 27, 2020, consisting of photographs of the product packaging depicting Rubbermate as the manufacturer of the gloves under PO-82.

55.     Amazon's purchase of the products in PO-82 was expressly premised on Paradigm's, Dandillaya's, and de Borbon's repeated false representations including, without limitation, that the products being purchased were FDA approved and manufactured by Rubbermate.

56.     Amazon timely prepaid $2,500,000 for the gloves under PO-82.

57.     Amazon also paid Paradigm an additional $156,250 upon delivery of 1.25 million pairs of gloves.

58.     The 1.5 million gloves that Paradigm delivered did not conform to the requirements of PO-82.  Paradigm breached the terms of the Purchase Order by failing to deliver FDA-approved blue nitrile gloves manufactured by Rubbermate.[10]

59.     Amazon informed Paradigm in a reasonable time after learning that the gloves did not conform to PO-82 and were rejected.[11]  Under the terms of the Purchase Order, in such instances Amazon is liable only for the cost of shipping the rejected product back to Paradigm and is responsible for "no further charge or liability."  Despite this, Paradigm has refused to refund Amazon's prepayment for the gloves.

---

[10] Section 19 of the Purchase Orders is entitled "**Representations and Warranties**." It provides, in relevant part: "Supplier [i.e., Paradigm] represents and warrants that (a) the Project [i.e., the gloves at issue in this case] is free from defects in design, materials, workmanship and title; (b) the Goods [i.e., the gloves at issue in this case] are of good and suitable quality and that all materials and other items incorporated in the Goods will be new (not refurbished or reconditioned), unused and suitable for their intended purpose…."

[11] Section 10 of the Purchase Orders is entitled "**Rejection and other Remedies**." It provides, in relevant part:  "If the Project [i.e., the gloves at issue in this case] does not strictly comply with the requirements of this Purchase Order, Purchaser [i.e., Amazon] may reject any or all of them within a reasonable period of time after delivery without regard to whether payment has been made.  In such case, Purchaser may, at Supplier's [i.e., Paradigm's] expense, (a) retain any or all of such Goods [i.e., the gloves at issue in this case] for correction by Purchaser or others, (b) return any or all of such Goods with or without instruction for correction or replacement or (c) procure replacement Goods from a third party and require Supplier to reimburse Purchaser for its associated costs and expenses associated.  Supplier will promptly comply with any instruction for correction or replacement. . . . Purchaser will be entitled to recover from Supplier (by credit, offset, refund, invoice or otherwise) an equitable amount for the diminished value of any uncorrected Goods and all costs reasonably incurred by Purchaser in connection with rejected Goods (including but not limited to all costs of correction by Purchaser or others and all costs to return Goods to Supplier)."

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 13

60.     Amazon incurred damages from Paradigm's breaches of PO-82 including, but not limited to, the $2,645,250 payment made under PO-82 that Paradigm refuses to refund, as well as Amazon's lost profits resulting from the breach.

## COUNT TWO

### Breach of Purchase Order 2D-03387284 (as to Paradigm)

61.     Amazon repeats and realleges the allegations set forth above as if fully set forth herein.

62.     On April 27, 2020, Amazon issued Purchase Order 2D-03387284 ("PO-84") for 60 million pairs of non-powder, blue, 3 mil, nitrile gloves (12 million medium, 30 million large, 18 million xlarge) for $15,000,000.

63.     The parties agreed to the terms of PO-84, which incorporate, without limitation, attachments and exhibits, specifications, drawings, notes, instructions and other information, whether physically attached or incorporated by reference, which include, without limitation:

- the requirement that explicitly conditions such orders on such gloves being FDA approved;

- the specifications, requirements, and other information and materials Paradigm sent Amazon on April 29-30, 2020 in the "Glove 0429.cs" document, reflecting VRG's FDA 510(k) premarket approval, FDA registration number, and ISO certificates, among other information;

- the specifications, descriptions, and other information and materials Paradigm sent Amazon on May 21, 2020, confirming that Vgloves would be the brand and VRG the manufacturer of the gloves purchased under PO-84; and

- the specifications, descriptions, and other information and materials Paradigm sent Amazon on May 27, 2020, consisting of photographs of the product packaging depicting VRG as the manufacturer of the gloves under PO-84.

64.     Amazon timely prepaid $7,500,000 for the gloves under PO-84.

65.     Amazon timely and expressly canceled any deliveries under section 9 of PO-84 in

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  writing prior to shipment, delivery, or acceptance of any gloves, and demanded a refund.

2  66.    Paradigm breached PO-84 by refusing to refund Amazon the $7,500,000 that

3  Amazon had prepaid.

4  67.    Amazon incurred damages from Paradigm's breach of PO-84 including, but not

5  limited to, $7,500,000 payment made under PO-84 that Paradigm refuses to refund, as well as

6  Amazon's lost profits resulting from the breach.

7  **COUNT THREE**

8  **Violation of the Washington Consumer Protection Act, RCW § 19.86, *et seq.***

9  **(as to all Defendants)**

10  68.    Amazon repeats and realleges the allegations set forth above as if fully set forth

11  herein.

12  69.    In the course of Defendants' business of advertising, marketing, selling, and

13  arranging for the manufacture and importation of goods, Defendants (including Dandillaya and

14  de Borbon, in their capacity as agents of Paradigm) willfully used deceptive representations in

15  connection with their goods and services and did so knowing that such representations were

16  deceptive.

17  70.    In the course of Defendants' business of advertising, marketing, selling, and

18  arranging for the manufacture and importation of goods, Defendants (including Dandillaya and

19  de Borbon, in their capacity as agents of Paradigm) willfully represented that the gloves were of

20  a particular standard, kind, quality, or grade knowing that they were of another, and did so

21  knowing such representations were deceptive.

22  71.    Specifically, in the course of Defendants' business of advertising, marketing,

23  selling, and arranging for the manufacture and importation of goods, Paradigm (through the

24  actions of Dandillaya and de Borbon in their capacity as agents of Paradigm) made willful

25  misrepresentations to Amazon including without limitation:

26  •     that the gloves to be delivered under the Purchase Orders would be FDA-

27  approved gloves from a reputable manufacturer that satisfied Amazon's SDS

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 15

process;

- that Defendants had connections with Rubbermate and were authorized agents of Rubbermate;

- that Defendants were authorized to use Rubbermate factory certificates;

- and that the gloves under PO-82 were manufactured by Rubbermate.

72.     Prior to finalization of the Purchase Orders, de Borbon individually and in his capacity as agent for Paradigm made willful misrepresentations to Amazon, including without limitation:

- that Paradigm had access to significant supplies of FDA-approved gloves, that any gloves ordered by Amazon would be FDA-approved gloves made by a reputable manufacturer;

- that the gloves under the Purchase Orders would be manufactured by Rubbermate, and

- that Paradigm was authorized to use the Rubbermate factory certificates and other documentation provided to Amazon to enable the sale.

73.     After the Purchase Orders were finalized, de Borbon, individually and in his capacity as agent for Paradigm, made further willful misrepresentations to Amazon including without limitation:

- continuing to claim that the gloves were manufactured by Rubbermate;

- sending Amazon an image of a box of gloves naming Rubbermate as the manufacturer, and

- sending Amazon documentation, including a forged Rubbermate invoice, indicating that Paradigm had contracted with Rubbermate for the gloves.

74.     Individually, and in his capacity as Paradigm's agent, Dandillaya made willful misrepresentations to Amazon, including without limitation:

- falsely asserting that the gloves had been manufactured by Rubbermate after being confronted by Amazon with evidence to the contrary;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 16

- sending false and misleading documents to Amazon purporting to state that the gloves had been manufactured by Rubbermate, and

- falsely claiming that Rubbermate and Skymed (the purported glove brand provided by Paradigm to Amazon) had previously had a relationship and only recently had a falling out.

75. As a result of Defendants' deceptive trade practices, Amazon has suffered damages including, without limitation, the amounts Amazon paid for the gloves.

76. Pursuant to RCW § 19.86.090, Amazon is entitled to treble damages, its costs and reasonable attorneys' fees incurred in this matter, and enjoinment of Defendants from further defrauding buyers.

## COUNT FOUR

### Fraud in the Inducement (as to all Defendants)

77. Amazon repeats and realleges the allegations set forth above as if fully set forth herein.

78. Dandillaya and de Borbon, both individually and in their capacity as agents of Paradigm, made material misrepresentations of fact to Amazon.  Such misrepresentations include, but are not limited to:

- on or about April 15, 2020, making the false claim that the gloves to be delivered under the Purchase Orders would be FDA-approved gloves;

- on or about May 20, 2020, making the false claim that Defendants had connections with Rubbermate and were authorized agents of Rubbermate;

- on May 20, 2020, sending documentation to Amazon such as the "WA Document" that falsely represented that Rubbermate would be the manufacturer of the gloves, which used Rubbermate factory certificates and therefore misrepresented that Paradigm was authorized to use Rubbermate factory certificates;

- on May 21, 2020, falsely representing that the gloves under PO-82 were

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

manufactured by Rubbermate and were FDA-approved, including, without limitation, that the gloves were approved pursuant to section 510(k) and certified by the ISO, and attaching a photo of specifications of the product packaging, which clearly indicates Rubbermate as the manufacturer of the gloves as well as 510(k) approval by the U.S. FDA.

- on May 28, 2020, sending a video that falsely suggested that Rubbermate was the manufacturer of the gloves;

- to further perpetuate their deception and fraud on Amazon, fabricating and sending an invoice from Rubbermate to Paradigm purporting to show the sale of 40 million gloves dated June 10, 2020. On information and belief, this invoice was a forgery;

- on or about July 6, 2020, sending a third-party laboratory that was performing testing on Amazon's behalf an "Amazon QA Requisition Form" with "Rubbermate" filled out as "Factory Name";

- on or about July 17, 2020, representing that the gloves met or exceeded all relevant regulatory standards, including all relevant U.S. and European standards;

- on or about August 14, 2020, reiterating that Rubbermate was the manufacturer of the gloves Amazon ordered from Paradigm under PO-82 and resending the prior fraudulent documentation that Paradigm had earlier provided.

79. Defendants misrepresented the origin, manufacturer, and quality of the gloves in order to induce Amazon to enter into the Purchase Orders, accept Defendants' nonconforming deliveries, and make payments. Knowing that Amazon required FDA-approved gloves, Defendants knowingly submitted Rubbermate's factory certificates to identify the factory of origin of the gloves supplied and to be supplied to Amazon pursuant to PO-82, while knowing that Defendants had no relationship with Rubbermate and that the gloves had not been

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 18

1  manufactured by Rubbermate.

2      80.    The misrepresentations by Defendants were made with knowledge of their falsity

3  or with utter disregard and recklessness as to falsity, and with an intent to mislead Amazon into

4  making the aforementioned purchase.

5      81.    For example, Amazon confronted Defendants with evidence from Rubbermate's

6  representatives confirming that the PO-82 gloves were fraudulent in nature and that Rubbermate

7  had never done any business with Skymed.  Amazon also provided Defendants with a link to

8  Rubbermate's website pointing directly to the fraud associated with the use of fake W.A.

9  Rubbermate certificates or use of W.A. certificates without authorization, including in

10  association with the Skymed brand.

11      82.    On or about September 1, 2020, Defendants, however, continued to assert that the

12  gloves covered by PO-82 were Rubbermate-manufactured, FDA 510(k)-approved gloves and

13  further misrepresented the relationship between Sufficiency Ltd. and Rubbermate.

14      83.    On or about this same date, Defendants continued to send false or unauthorized

15  510(k) approval documents pertaining to Rubbermate.  Defendants further misrepresented that,

16  while Skymed had a prior relationship with Rubbermate, they had recently had a falling out.

17      84.    The misrepresentations by Defendants were of material facts.

18      85.    As Defendants intended, Amazon reasonably relied on Defendants'

19  misrepresentations to enter into the Purchase Orders, pay the initial pre-paid amount, accept the

20  goods under the first Purchase Agreement, pay an additional pro-rata amount, and house the non-

21  conforming gloves.

22      86.    Amazon would not have entered into a contract with Paradigm but for Amazon's

23  justifiable reliance on Defendants' fraudulent misrepresentations.

24      87.    Amazon has sustained damages as a result of Defendants' fraudulent inducement.

25                          **<u>DEMAND FOR JURY TRIAL</u>**

26      88.    Amazon hereby demands a trial by jury of all issues so triable.

27

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## **PRAYER FOR RELIEF**

WHEREFORE, Amazon prays that this Court enter judgment against Defendants and in favor of Amazon as follows:

1.      Actual damages;

2.      All damages, including treble damages, recoverable under the Washington Consumer Protection Act, as well as all recoverable fees, costs, and attorney fees, and enjoinment of Defendants from further defrauding buyers;

3.      Punitive and/or exemplary damages due to Defendants' willful disregard of the rights of Amazon and the public, and outrageous and reckless conduct toward the safety of Amazon and the public, in an amount to be proven at trial;

4.      All other damages allowed by law;

5.      Pre-judgment and post-judgment interest as allowed by law;

6.      Costs of litigation incurred herein;

7.      An order enjoining Defendants from perpetuating their fraud on others; and

8.      Any such other and further relief as the Court deems just and equitable.

9.      Amazon specifically reserves the right to pursue additional causes of action, claims, and/or forms of relief other than those specifically outlined above, that are supported by the facts pleaded herein or that may be supported by other facts that emerge during discovery.


DATED this 8th day of June, 2021.

<div style="margin-left: 40%;">

Davis Wright Tremaine LLP
Attorneys for Amazon.com Services LLC

By *s/ Scott R. Commerson*
Scott R. Commerson (*pro hac vice* application forthcoming)
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Tel: (213) 633-6800
Fax: (213) 633-6899
Email: scottcommerson@dwt.com

</div>

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*s/ Arthur Simpson*
Arthur Simpson, WSBA #44479


920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1604
Tel: (206) 622-3150
Fax: (206) 757-7700
Email: arthursimpson@dwt.com

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 21