1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM SERVICES LLC, a Delaware limited liability company, | CASE NO. 2:21-cv-00753 |
| Plaintiff, | ORDER DENYING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS |
| v. | |
| PARADIGM CLINICAL RESEARCH INSTITUTE, INC., a California corporation; RAMPRASAD DANDILLAYA, M.D., an individual; JUAN JESUS ROJAS DE BORBON, an individual; KARMA FAMILY LLC, a California limited liability company; and KAREEM MARMOSH, an individual, | |
| Defendants. | |

## 1. INTRODUCTION

In April 2020, at the start of the COVID-19 pandemic, Amazon.com Services LLC ("Amazon") contracted with Paradigm Clinical Research Institution, Inc. ("Paradigm") to buy 80 million nitrile gloves for its employees and customers for $20,000,000. Amazon alleges the deal was a "scam" and that Paradigm had neither the ability nor intent to honor its side of the bargain. Amazon sued Paradigm, third

party-supplier Karma Family LLC ("Karma"), and their owners for breach of contract and other statutory and tort claims. Paradigm counterclaimed alleging similar causes of action.

Paradigms' owners, Dr. Ramprasad Dandillaya and Juan Jesus Rojas de Borbon (together, "Individual Defendants), now move to dismiss Amazon's Second Amended Complaint ("SAC") for lack of personal jurisdiction and for failure to state a claim against them otherwise. The Court has read the papers submitted in support of and opposition to the motions, and being otherwise informed, finds oral argument unnecessary. As explained below, Amazon has successfully demonstrated that the Court has personal jurisdiction over the Individual Defendants and that it has stated plausible claims for relief against them.

Accordingly, the Court DENIES the Individual Defendants' Motion to Dismiss.

## 2. BACKGROUND

Amazon is a limited liability company organized under Delaware law with its principal place of business in Seattle, Washington. Dkt. No. 66 at 4. Defendant Paradigm is a California-based entity. *Id*. Dandillaya and de Borbon also reside in California. *Id*. Dandillaya incorporated Paradigm on January 10, 2014. *Id*. at 5. Until February 1, 2021, Dandillaya was Paradigm's only corporate officer. *Id*. De Borbon became co-owner and CEO of Paradigm on February 1, 2021. *Id*.

At the start of the COVID-19 pandemic, Amazon was struggling to keep up with the demand for personal protective equipment ("PPE"). *Id*. at 6. Paradigm solicited Amazon's business for the sale of nitrile gloves. *Id*. De Borbon claimed that

Paradigm had connections to established medical glove manufacturers and brands through Paradigm's clinical research. *Id.* at 7. So over several weeks in April 2020, Amazon and Paradigm negotiated the purchase and sale of a significant number of gloves. *Id.* at 12-13. As part of the purchase, Amazon required a Safety Data Sheet (SDS) that identified product manufacturer's name, brand, factory location, and various FDA and regulatory certifications. *Id.* at 10-11. The SDS would become part of any purchase order. *Id.*

At the end of April 2020, Amazon issued two purchase orders to Paradigm for 80 million pairs of blue nitrile gloves in exchange for $20,000,000. *Id.* at 12. Purchase Order 82 (PO-82) was for 20 million pairs in exchange for $5,000,000 and Purchase Order 84 (PO-84) was for the remaining 60 million pairs at $15,000,000. *Id.* De Borbon required Amazon to pay a 50 percent deposit of the total purchase price for the gloves upfront, with the remaining 50 percent payment to be provided upon delivery of the gloves. *Id.* at 9. Consistent with Amazon's SDS requirements and the Purchase Orders, Paradigm promised that the gloves would meet all of Amazon's requirements, including FDA-approval and production by reputable manufacturers who would comply with all relevant quality standards. *Id.* at 10-11. Before any gloves were ever shipped, Amazon paid Paradigm 50 percent of the purchase price for the gloves as a required deposit. *Id.* at 12.

On May 4, 2020, Paradigm entered a contract with Karma Family to buy 120 million nitrile gloves. *Id.* at 13. Dandillaya and de Borbon had served as officers of a company called C3 International, Inc. with one of the founders of Karma Family, Defendant Kareem Marmosh. *Id.* at 13. After contracting with Karma Family,

Paradigm continued to represent to Amazon that they were negotiating with various manufacturers to procure the gloves. *Id.* at 14. Karma Family contracted with Brellaba LLC, a one member LLC, for 40 million disposable gloves. *Id.* On May 14, 2020, de Borbon represented to Amazon that a manufacturer had agreed to "shav[e] 3 weeks off of delivery time." *Id.* at 15. Around May 20, 2020, de Borbon informed Amazon that Paradigm would be supplying FDA-approved gloves manufactured by W.A. Rubbermate Co., Ltd. ("Rubbermate") and sold under the brand "Skymed" for PO-82. *Id.* De Borbon sent Amazon a document and an email that appeared to be prepared by the manufacturer of W.A. Rubbermate gloves. *Id.* In reality, they were prepared by Marmosh at the request of de Borbon and Dandillaya. *Id.* Amazon relied on these two documents and approved the SDS and PO-82. *Id.* at 16.

To fill PO-84, Paradigm proposed gloves manufactured by VRG Khai Hoan ("VRG"), branded as "V Gloves." *Id.* at 16. De Borbon sent Amazon photographs of the V-Glove-branded gloves, an FDA registration number, and other certificates and registrations. *Id.*

De Borbon represented to Amazon that he had calls scheduled with both Skymed and VRG and that he intended to meet with both companies weekly. *Id.* On May 18, 2020, de Borbon sent Amazon a 38-second video purportedly showing Skymed gloves being made; he later sent photos of the product packaging. *Id.* at 17. Both were fabrications made by Marmosh. *Id.* at 17–18.

On July 1, 2020, Paradigm sent two packages of 100 nitrile gloves to a third-party laboratory for testing to ensure that the gloves met Amazon's PPE standard.

ORDER DENYING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS - 4

*Id.* at 19. The accompanying forms de Borbon sent with the gloves falsely represented that the gloves were made in a Rubbermate factory. *Id.* Marmosh and de Borbon represented to Amazon that Marmosh was the corporate representative for VRG and that he would serve as Amazon's point of contact. *Id.* at 20.

On June 24, 2020, Amazon received over one million pairs of gloves. *Id.* at 20. On August 17, 2020, Amazon received a second shipment of 296,0000 pairs of gloves. *Id.* Paradigm informed Amazon these were the first shipments of the 20 million gloves manufactured by Rubbermate under PO-82. *Id.* at 20.

On July 29, 2020, Paradigm and Karma learned that the gloves they procured were inauthentic and non-FDA conforming. *Id.* at 21. Around August 12, 2020, Amazon noticed that the laboratory's sample report referenced the glove manufacturer as a company called Sufficiency Economy City Ltd. ("Sufficiency"). *Id.* at 22. Amazon confronted Paradigm with this new information. *Id.* at 22. Dandillaya reaffirmed that W.A. Rubbermate was the manufacturer of the Skymed gloves that Paradigm delivered. *Id.*

Sometime between May 11, 2020, and August 20, 2020, de Borbon transferred $2,000,000 of Amazon's initial deposit from Paradigm's primary business checking account to banking accounts of various other entities that he owned and controlled. *Id.* at 27. On May 13, 2020, Dandillaya also transferred $310,377 from Paradigm's primary business checking account to another Paradigm account. *Id.* at 28. He made later transfers to his various colleagues from his separate medical center and to de Borbon. *Id.* On July 16, 2020, Dandillaya wired $150,000 to his own checking account as a purported loan. *Id.* He also used

Paradigm's primary business checking account to wire over $20,000 to the Church of Scientology. *Id.* at 29.

On September 22, 2020, Amazon sent a demand letter to Paradigm canceling the entirety of PO-84 under Section 9 of the Purchase Order, which allowed cancellation with notice. *Id.* at 23. Amazon also demanded that Paradigm retake possession of the approximately 1.5 million gloves Paradigm had delivered under PO-82 and an immediate refund of all amounts already paid to Paradigm. *Id.* at 24. Paradigm refused to return Amazon's money. *Id.*

Amazon alleges Paradigm did not have enough capital to support the orders that it accepted. *Id.* at 24- 25. As of February 28, 2023, Paradigm's primary business checking account had a balance of $199,178.74. *Id.* at 32. Paradigm used portions of the deposits received from other companies to cover the losses of earlier depositors. *Id.* at 26. Paradigm did not have enough funds left to refund Amazon. *Id.*

Paradigm did not conduct a single meeting of its shareholders or directors or execute a single written consent excusing the company from conducting any such annual meetings between 2015 and 2020. *Id.* at 26.

### 3. DISCUSSION

**3.1    Rule 12(b)(2) Motion.**

The Individual Defendants have already moved to dismiss for lack of jurisdiction once before. The esteemed Judge Richard A. Jones granted in part the Individual Defendants' first motion to dismiss finding that Amazon had not demonstrated that the court had personal jurisdiction of Dandillaya and de Borbon.

Dkt. No. 50 at 22. But Judge Jones granted Amazon leave to conduct jurisdictional discovery and to file an amended complaint as necessary. *Id.* Jurisdictional discovery is complete, and Amazon has amended its complaint, and the Individual Defendants renew their attack.

Amazon still bears the burden of proving that the court has personal jurisdiction over the Individual Defendants. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). On this procedural posture—when the court receives only declarations and discovery materials— "a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

Judge Jones explained the standards applicable to a Rule 12(b)(2) motion in his previous order, so this Court need not repeat them except to say that a "court's exercise of personal jurisdiction over a nonresident defendant may be either general or specific." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). The parties do not contend the Court has general jurisdiction, so the Court will focus its analysis on the presence of specific jurisdiction.

### 3.1.1  The Court cannot find purposeful direction because the Individual Defendants did not expressly aim their conduct at Washington.

Amazon argues that the Court has specific jurisdiction over the Individual Defendant. The Ninth Circuit applies a three-part test when analyzing specific jurisdiction over a non-resident defendant:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (internal citation omitted).

Amazon bears the burden of satisfying the first two prongs of the test. *Id.* If it meets this requirement, the burden shifts to the Individual Defendants to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

The Ninth Circuit uses the purposeful availment standard for contract claims and the purposeful direction standard for tort claims. Amazon only argues for purposeful direction. To show purposeful direction, a plaintiff must sufficiently allege that the defendant "'purposefully direct[ed] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (internal quotations omitted)). Under the effects test, "the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Doe v.*

1    *WebGroup Czech Republic, A.S.*, 89 F.4th 1188, 1198 (9th Cir. 2024) (internal

2    quotations omitted).

3        Like Judge Jones, this Court concludes that Amazon sufficiently alleges that

4    the Individual Defendants committed intentional acts when they supposedly made

5    multiple fraudulent misstatements of fact to Amazon's Washington employees by

6    text and email. *See* Dkt. No. 66 at 14, 15, 17; *see also* Dkt. No. 50 at 16.

7        But Amazon still has not alleged sufficient facts or provided evidence to show

8    that Defendants "expressly aimed" their acts at Washington. "Express aiming

9    requires more than the defendant's awareness that the plaintiff it is alleged to have

10   harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be

11   the only link between the defendant and the forum.'" *Ayla, LLC v. Alya Skin Pty.*

12   *Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285

13   (2014)). Indeed, "the Supreme Court ha[s] 'consistently rejected attempts to satisfy

14   the defendant-focused "minimum contacts" inquiry by demonstrating contacts

15   between the plaintiff (or third parties) and the forum State.'" *Briskin v. Shopify,*

16   *Inc.*, 87 F.4th 404, 416 (9th Cir. 2023) (quoting *Walden*, 571 U.S. at 284).

17       In analyzing Amazon's First Amended Complaint, Judge Jones stated,

18   "Amazon's allegations concerning the misrepresentations and other communications

19   between the parties only serve to connect Individual Defendants to Amazon and not

20   to the [S]tate of Washington or its public." Dkt. No. 50 at 16. Yet its SAC and

21   response to this motion rely on nearly the same factual allegations as before.

22   *Compare* Dkt. No. 76 at 25 *with* Dkt. No. 33 at 19.

23

24

ORDER DENYING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS - 9

1    Because the Individual Defendants did not expressly aim their suit-related

2    conduct toward Washington, the Court cannot find purposeful direction. *Briskin*, 87

3    F.4th at 422.

4

5    ### 3.1.2  Amazon has established a prima facie case for piercing the corporate veil.

6    Amazon argues that "because it is undisputed that the Court has personal

7    jurisdiction over Paradigm, and Amazon's uncontroverted allegations and evidence

8    establish, at a minimum, a prima facie showing of an alter ego relationship between

9    the Paradigm Defendants," the Court should deny the Individual Defendants Rule

10   12(b)(2). Dkt. No. 76 at 20.

11   "To allege liability under the 'alter ego' doctrine, a plaintiff must show '(1)

12   that there is such unity of interest and ownership that the separate personalities of

13   the two entities no longer exists, and [that] (2) that failure to disregard their

14   separate identities would result in fraud or injustice.'" *Williams v. Yamaha Motor

15   Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citing *Ranza v. Nike, Inc.*, 793 F.3d 1059,

16   1073 (9th Cir. 2015)).

17   A plaintiff arguing that the alter ego doctrine applies must specifically allege

18   both elements of the alter ego test, and facts supporting each element. *MH Pillars

19   Ltd. v. Realini*, No. 15-CV-1383-PJH, 2017 WL 916414, at *12 (N.D. Cal. Mar. 8,

20   2017). The alter ego standard for alleging personal jurisdiction is "lower" than the

21   standard used for determining liability. *San Mateo Cnty. Transit Dist. v. Dearman,

22   Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992). It is met if the

23

24

1    "plaintiff makes a non-frivolous allegation that the defendant controlled a person

2    liable." *Id.*

3           Plaintiff can plead several factors to show unity of interest including, but not

4    limited to, commingling of funds and other assets of the two entities, the holding out

5    by one entity that it is liable for the debts of the other, identical equitable

6    ownership in the two entities, use of the same offices and employees, and use of one

7    as a mere shell or conduit for the affairs of the other. *RHN Inc. v. CNA Nat'l*

8    *Warranty Corp.*, No. CV-19-02960-PHX-GMS, 2020 WL 4501484, at *3 (D. Ariz.

9    Aug. 5, 2020). "No single factor is determinative, and instead a court must examine

10   all the circumstances to determine whether to apply the doctrine." *Aliya Medcare*

11   *Fin., LLC v. Nickell*, No. CV 14-07806 MMM (EX), 2015 WL 11072180, at *21 (C.D.

12   Cal. Sept. 25, 2015) (internal citation omitted).

13          Turning to the first factor, Judge Jones found that Amazon's allegations were

14   "largely conclusory and merely mimic[ed] the language of factors that courts use to

15   determine alter ego status." Dkt. No. 50 at 14. After conducting jurisdictional

16   discovery, Amazon added factual allegations and evidence supporting its contention

17   that Paradigm was undercapitalized and commingling funds. *See* Dkt. No. 66 at 10,

18   24-26. Amazon contends that Paradigm was a "shell company" due to its inadequate

19   capitalization, lack of employees, nonexistent office space, inability to generate

20   material revenue, and minimal assets. Dkt. No. 66 at 25. Amazon also alleged that

21   Paradigm did not maintain adequate funds to reimburse its customers' deposits in

22   case it could not provide conforming products. *Id.* Amazon added factual allegations

23   illustrating ways that the Individual Defendants, and other entities that they are

24

1   affiliated with, have comingled funds with Paradigm. *Id.* at 27–29. Relatedly,

2   Amazon has alleged that the Individual Defendants have misappropriated portions

3   of Amazon's deposit for their own personal use to buy real estate, luxury vehicles,

4   paydown personal debts, and to take religious courses. *Id.*

5       These factual allegations and the supporting documents provide a sufficient

6   basis to conclude that Amazon has stated a prima facie case that Dandillaya and de

7   Borbon share a unity of interest with Paradigm such that Paradigm may not really

8   exist as a seperate entity.

9       Next, the Court must consider whether disregarding their separate entities

10  would work an injustice. "[A]lthough insolvency 'does not of itself constitute an

11  inequitable result,' '[c]ourts have found this prong satisfied when a corporation is so

12  undercapitalized that it is unable to meet debts that may reasonably be expected to

13  arise in the normal course of business.'" *Intelligent SCM, LLC v. Qannu PTY Ltd.*,

14  No. CV1406417MMMVBKX, 2015 WL 13916820, at *21 (C.D. Cal. July 2, 2015)

15  (quoting *Laborers Clean-Up Cont. Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc.*,

16  736 F.2d 516, 525 & n. 13 (9th Cir. 1984)); *City & Cnty. of San Francisco v. Purdue

17  Pharma L.P.*, 491 F. Supp. 3d 610, 635 (N.D. Cal. 2020) ("An inequitable result

18  includes enabling a 'shell game.'"); *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-

19  0578-BTM-BLM, 2010 WL 3339432 (S.D. Cal. Aug. 24, 2010), at *7 ("Inequitable

20  results flowing from the recognition of the corporate form include the frustration of

21  a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of

22  personal liability.").

23

24

1      Amazon has alleged that Paradigm did not have enough money in its bank

2  accounts to "meet debts that may reasonably be expected to arise in the normal

3  course of business." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir.

4  2017) (citation omitted). Amazon also claims that Paradigm has almost no assets to

5  satisfy a potential judgment against it because of the Individual Defendants

6  comingling and suspicious money transfers. Thus, it would not be unjust at this

7  stage of the case to disregard the separate identities of Paradigm and the Individual

8  Defendants.

9      Accordingly, the alleged facts are sufficient to establish an alter ego

10  relationship between the Individual Defendants and Paradigm for purposes of

11  personal jurisdiction. The Court attributes the forum contacts of Paradigm to the

12  Individual Defendants.[1]

13

14  **3.2    Rule 12(b)(6) Motion.**

15      The Individual Defendants move to dismiss Amazon's remaining claims

16  against them for failure to state a plausible claim for relief.

17      The Court will grant a motion to dismiss only if the complaint fails to allege

18  "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

19  *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

20

21  [1] The Ninth Circuit has explained that just because a plaintiff makes a prima facie
   showing of personal jurisdiction, "it does not necessarily mean that he may then go

22  to trial on the merits. If the pleadings and other submitted materials raise issues of
   credibility or disputed questions of fact with regard to jurisdiction," the plaintiff

23  must be "put to his full proof … [and] establish the jurisdictional facts by a
   preponderance of the evidence" at a later evidentiary hearing or trial on the merits.

24  *Data Disc,* 557 F.2d at 1285.

ORDER DENYING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS - 13

1   plaintiff pleads factual content that allows the court to draw the reasonable

2   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

3   556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard is less than

4   probability, "but it asks for more than a sheer possibility" that a defendant did

5   something wrong. *Id.* (citations omitted). "Where a complaint pleads facts that are

6   'merely consistent with' a defendant's liability, it 'stops short of the line between

7   possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S.

8   at 557). In other words, a plaintiff must have pled "more than an unadorned, the-

9   defendant-unlawfully-harmed-me accusation." *Id.*

10      When considering a motion to dismiss, the Court accepts factual allegations

11  pled in the complaint as true and construes them in the light most favorable to the

12  plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). But courts "do not

13  assume the truth of legal conclusions merely because they are cast in the form of

14  factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations

15  omitted). Thus, "conclusory allegations of law and unwarranted inferences are

16  insufficient to defeat a motion to dismiss." *Id.* (citations omitted).

17

18  ### 3.2.1  Breach of contract claim.

19      The Individual Defendants allege that they cannot be held liable for breach of

20  the Purchase Orders because they are not named parties. As described above, for

21  purposes of this motion to dismiss, Amazon has sufficiently alleged that the

22  Individual Defendants are Paradigm's alter ego. Paradigm's contractual liability

23

24

could extend to the Individual Defendants if they are found to be an alter ego of Paradigm.

Accordingly, the Court DENIES Defendants' motion with respect to the breach of contract claim.

### 3.2.2  Washington Consumer Protection Act (CPA) claim.

The Washington CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce …." RCW 19.86.020. To prevail on a CPA claim, Plaintiff must show: (1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered. *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1107 (Wash. 2015). The CPA "shall be liberally construed [so] that its beneficial purposes may be served." RCW 19.86.920.

The Individual Defendants argue that Amazon cannot satisfy the first or third elements and that it therefore fails to make out a CPA claim against them. The Court disagrees. Regarding the first element, "the CPA does not define 'unfair' or 'deceptive,' [so] the Washington Supreme Court has allowed the definitions to evolve through a gradual process of judicial inclusion and exclusion.'" *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1161 (W.D. Wash. 2017) (quoting *Saunders v. Lloyd's of London*, 779 P.2d 249, 256 (Wash. 1989)) (cleaned up). "Either an unfair or a deceptive act can be the basis for a CPA claim." *Veridian Credit Union*, 295 F. Supp 3d at 1161 (citing *Klem v. Wash. Mut. Bank*, 295 P.3d

1179, 1187 (Wash. 2013)). "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009). Stated differently, "[a] deceptive act or practice is measured by 'the net impression' on a reasonable consumer." *Washington v. Mandatory Poster Agency, Inc.*, 398 P.3d 1271, 1277 (2017) (quoting *Panag,* 204 P.3d at 895-96).

Based on the Washington courts' definition and the liberal construction afforded to the CPA, the Court finds that Amazon has adequately alleged that the Individual Defendants committed a deceptive act when they "falsely and deceptively represented to Amazon that Paradigm had identified two or more manufacturers of nitrile gloves" that would "manufacture the goods Amazon sought to procure." Dkt. No. 66 at 36. As alleged, the net impression on the part of Amazon was that Paradigm and its owners had connections to medical suppliers who could fulfill Amazon's large purchase orders for FDA-approved nitrile gloves. Amazon alleges this was not true and a misrepresentation of material importance. This is enough to satisfy the first element of Amazon's CPA claim against the Individual Defendants at this early stage of the case.

The Individual Defendants also challenge the third element of Amazon's CPA claim—that the acts alleged sufficiently affect the public interest. A CPA plaintiff may establish that an alleged unfair or deceptive act or practice is injurious to the public interest in one of three ways, including when it "(a) [i]njured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other

persons." RCW 19.86.093(3)(a). The Court considers a several factors in determining

whether the public has an interest:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

*Hunt v. Medtronic USA, Inc.*, 627 F. Supp. 3d 1188, 1196 (W.D. Wash. 2022)

(quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d

531, 538 (Wash. 1986)). "None of the factors are dispositive nor must all of the

factors be present." *Michael v. Mosquera-Lacy*, 200 P.3d 695, 700 (Wash. 2009).

The Individual Defendants were acting within the scope of their business.

Their company, Paradigm, holds itself out on its website as selling PPE, including

nitrile gloves. Dkt. No. 66 at 11, 39. Amazon attempted to purchase nitrile gloves

from Paradigm. The SAC alleges that their conduct is "likely to similarly injure

other purchasers." Dkt. No. 66 at 39. There is already a substantially similar

lawsuit pending against Paradigm in the U.S. District Court for the Western

District of North Carolina by Viza Electronics LLC for Paradigm's failure to supply

face masks. *See Viza Electronics, LLC, v. Paradigm Clinical Research Institute, et.

al.*, Cause No. 3:22-cv-00049-DCK; Dkt. No. 66 at 11. Paradigm also currently

maintains a website holding itself out as being able to supply PPE including nitrile

gloves. Dkt. No. 66 at 11, 39.

Plaintiff's allegations are not the "mere labels and conclusions [which are]

impermissible under *Twombly/Iqbal* standard." *Accretive Tech. Grp., Inc. v. Adobe*

*Sys., Inc.*, No. C15-309RSM, 2015 WL 4920079, at *11 (W.D. Wash. Aug. 17, 2015). Amazon has sufficiently alleged that this is a "pattern or generalized course of conduct" such that there is a "real and substantial potential for repetition." *Eifler v. Shurgard Cap. Mgmt. Corp.*, 861 P.2d 1071, 1079 (Wash Ct. App. 1993).

Plaintiff has sufficiently articulated a cognizable claim, and the motion to dismiss this cause of action is DENIED.

### 3.2.3   Fraud or fraudulent inducement.

The Individual Defendants contend that Amazon has inadequately plead claims of fraud and fraud in the inducement. Fraud in the inducement is "fraud which induces the transaction by misrepresentation of motivating factors such as value, usefulness, age or other characteristic of the property or item in question." *Pedersen v. Bibioff*, 828 P.2d 1113, 1120 (Wash. Ct. App. 1992). "A party claiming fraudulent inducement must allege the elements of fraud or alternatively allege that the defendant breached a duty to disclose a material fact." *Bite Tech Inc. v. X2 Impact, Inc.*, No. C12-1267RSM, 2012 WL 13018749, at *3 (W.D. Wash. Dec. 21, 2012).

To bring a claim for fraudulent inducement, plaintiff must show the following nine essential elements: "(1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it was made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9)

1
2

consequent damage." *Elcon Constr., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012).

3
4
5
6
7
8
9
10
11

Amazon contends that de Borbon, Marmosh, or both, individually and in their capacities as agents for Paradigm, knowingly made material misrepresentations of fact to Amazon. Dkt. No. 66 at 40. These representations were about the types of gloves that were to be delivered, their relationships with manufacturers, and the status of their negotiations. *Id.* The Individual Defendants knew that Amazon had certain requirements that they had to meet. *Id*. at 41. They were aware that Amazon reasonably relied on their misrepresentations. *Id.* The representations induced Amazon to enter into the purchase order. *Id.* at 41. Amazon sustained damages as a result of the fraudulent inducement. *Id.*

12
13
14
15
16
17
18
19
20
21

The Court is not persuaded by the Individual Defendants' argument that the fraud claim is entirely duplicative of the breach of contract claim. The "Washington Supreme Court has not provided any definitive statement indicating what kinds of circumstances might involve a duty to avoid negligent misrepresentation arising independently of the contract." *Reading Hosp. v. Anglepoint Grp., Inc.*, No. C15-0251-JCC, 2015 WL 13145347, at *4 (W.D. Wash. May 26, 2015). But the "only such circumstances that it has [identified] are situations" such as this "where a party's misrepresentations induce another party to enter into a contractual relationship." *Id.*

22
23
24

Additionally, at least some misrepresentations occurred before Amazon sent the Purchase Orders and even more that were made before the SDS was executed and the Purchase Orders were finalized.

ORDER DENYING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS - 19

1    Accordingly, Amazon has stated plausible claims, and the motion to dismiss

2    these causes of action are DENIED.

3        **3.2.4   Civil conspiracy to commit fraud and violate the WCPA.**

4        The Individual Defendants argue that Amazon's civil conspiracy claim fails

5    because it is based on inadequately pled causes of action. But the Court has found

6    that both Amazon's CPA and fraud claims survive this motion to dismiss. Amazon's

7    civil conspiracy cause of action is based on an underlying wrong.

8        The Individual Defendants also contend that Plaintiff has not plead the civil

9    conspiracy with the requisite specificity. A civil conspiracy exists where "(1) two or

10   more people contributed to accomplish an unlawful purpose, or combined to

11   accomplish a lawful purpose by unlawful means; and (2) the conspirators entered

12   into an agreement to accomplish the object of the conspiracy." *Gossen v. JP Morgan*

13   *Chase Bank*, 819 F. Supp. 2d 1162, 1171 (W.D. Wash. 2011). Amazon alleges the

14   Individual Defendants and Paradigm entered into an agreement and conspiracy to

15   falsely and deceptively represent themselves to Amazon and the public at large as

16   being well-positioned to acquire PPE directly from legitimate manufacturers. This

17   is enough to state a plausible claim at this early stage of the case.

18       The Individual Defendants remaining arguments are better saved for later

19   stages of this litigation. "The 'clear, cogent, and convincing' standard [for civil

20   conspiracies] constitutes a burden of proof, applicable at trial, and not a threshold

21   for proper pleading of a cause of action." *Minvielle v. Smile Seattle Invs., L.L.C.*, No.

22   C08-910Z, 2008 WL 4962694, at *2 (W.D. Wash. Nov. 19, 2008).

23

24

ORDER DENYING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS - 20

1    Thus, the Individual Defendants' motion to dismiss this cause of action is

2    DENIED.

3        **3.2.5  Washington Uniform Voidable Transactions Act claim.**

4        The Individual Defendants argue that Amazon is precluded from seeking a

5    remedy from them except under an alter ego theory. As described above, for the

6    purposes of establishing personal jurisdiction, the Court will permit Amazon to

7    proceed on an alter ego theory.

8        Under the Washington Uniform Voidable Transactions Act (WUVTA),[2] a

9    transfer may be fraudulent if: 1) it is made "[w]ith actual intent to hinder, delay, or

10   defraud any creditor of the debtor", or 2) it is made "[w]ithout receiving a

11   reasonably equivalent value in exchange for the transfer." RCW 19.40.041(a), (b). In

12   determining actual intent, courts may consider among other things whether:

> (1) The transfer or obligation was to an insider; (2) The debtor retained
> possession or control of the property transferred after the transfer; (3)
> The transfer or obligation was disclosed or concealed; (4) Before the
> transfer was made or obligation was incurred, the debtor had been sued
> or threatened with suit; (5) The transfer was of substantially all the
> debtor's assets; (6) The debtor absconded; (7) The debtor removed or
> concealed assets; (8) The value of the consideration received by the
> debtor was reasonably equivalent to the value of the asset transferred
> or the amount of the obligation incurred; (9) The debtor was insolvent or
> became insolvent shortly after the transfer was made or the obligation
> was incurred; (10) The transfer occurred shortly before or shortly after
> a substantial debt was incurred; and (11) The debtor transferred the
> essential assets of the business to a lienor who transferred the assets to
> an insider of the debtor.

---

[2] WUVTA instructs courts to apply and construe the law to "effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." RCW 19.40.903; *Sedwick v. Gwinn*, 873 P.2d 528, 532 (Wash. Ct. App. 1994) ("[C]ase law from other jurisdictions can provide guidance in interpreting.").

ORDER DENYING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS - 21

RCW 19.40.041(2).

In the SAC, Amazon describes a series of transfers. Dkt. No. 66 at 47-48. Amazon also alleges that the transfers went to insiders, such as de Borbon and Dr. Dandillaya. Dkt. No. 66 at 47. It also alleges the money was transferred "without receiving a reasonably equivalent value in exchange for the transfer" and that the remaining assets after the transfer were "unreasonably small." *Id.*

Although some of Amazon's allegations "suggest[ ] legal conclusions, because the wording of the alleged facts utilize the same language used in the requisites of the" WUVTA, the "allegations provide Defendant[s] notice of what the claim is and the grounds upon which it rests." *Travelers Cas. & Sur. Co. of Am. v. Hunt,* No. 215CV00336TLNCKD, 2016 WL 727285, at *4 (E.D. Cal. Feb. 24, 2016). Plaintiff's pleadings also satisfy Rule 9(b) because they "identify the who, what, when, where, and how of the misconduct charged." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal citation omitted).

Plaintiff has thus stated a plausible claim, and the motion to dismiss this cause of action is DENIED.

## 4. CONCLUSION

For the reasons stated above, the Court DENIES the Individual Defendant's motion to dismiss. Dkt. No. 70.

Dated this 29th day of March, 2024.

Jamal N. Whitehead
United States District Judge