UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM SERVICES LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br> v.<br><br>PARADIGM CLINICAL RESEARCH INSTITUTE INC., a California corporation, RAMPRASAD DANDILLAYA, M.D., JUAN JESUS ROJAS DE BORBON, KARMA FAMILY LLC, KAREEM MARMOSH,<br><br>    Defendants. | CASE NO. 2:21-cv-00753<br><br>ORDER |
| PARADIGM CLINICAL RESEARCH INSTITUTE INC., a California corporation,<br><br>    Counter Claimant,<br><br> v.<br><br>AMAZON.COM SERVICES LLC, a Delaware limited liability company,<br><br>    Counter Defendant. | |

ORDER - 1

## 1. INTRODUCTION

This case arises from a $20 million transaction for personal protective equipment during the early stages of the COVID-19 pandemic. Amazon.com Services LLC ("Amazon") alleges that defendants engaged in a coordinated scheme to defraud it through misrepresentations about nitrile gloves that were either never delivered or failed to meet required specifications.

Before the Court is a motion by defendants Karma Family LLC ("Karma") and its owner, Kareem Marmosh (collectively, "Moving Defendants"), to dismiss Amazon's Second Amended Complaint (SAC) for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Dkt. No. 96. This motion follows the Court's earlier denial of a similar jurisdictional challenge by defendants Ramprasad Dandillaya and Juan Jesus Rojas de Borbon (collectively, "Individual Defendants"), the owners of defendant Paradigm Clinical Research Institute, Inc. ("Paradigm"). Dkt. No. 93.

The Court has read the papers submitted in support of and opposition to the motions, and being otherwise informed, finds oral argument unnecessary. Because Amazon has established the Moving Defendants functioned as alter egos of Paradigm for purposes of jurisdictional analysis, the Court DENIES their motion for the reasons stated below.

## 2. BACKGROUND

The Court previously detailed the factual background of this case in its Order Denying Individual Defendants' Motion to Dismiss. Dkt. No. 93 at 2–6. In summary, during the early COVID-19 pandemic in April 2020, Amazon contracted with

Paradigm to buy 80 million nitrile gloves for $20 million, paying a $10 million deposit upfront. Paradigm failed to deliver the vast majority of the promised gloves, and those delivered were non-conforming to Amazon's specifications. Amazon now seeks to hold Karma and its owner Kareem Marmosh accountable alongside Paradigm and its owners.

The following additional facts are particularly relevant to the relationship between Karma, Marmosh, and the other defendants:

Marmosh established Karma on April 16, 2020, and Marmosh and his spouse are the only members. Dkt. No. 66 ¶ 25. At the relevant time, Marmosh was Karma's only officer and a resident of California. *Id.* ¶¶ 15, 22. On May 4, 2020, three weeks after Marmosh formed Karma, Paradigm entered a contract with Karma to buy 120 million nitrile gloves. *Id.* ¶¶ 58–59. This was not Marmosh's first dealings with Paradigm's owners: Marmosh and Paradigm's co-owners de Borbon and Dandillaya had all served as officers of a company called C3 International, Inc. *Id.* ¶ 60.

After contracting with Karma, Paradigm continued to represent to Amazon that they were negotiating with various manufacturers to procure the gloves. *Id.* ¶ 64. Marmosh played a significant role in the communications with Amazon. He prepared documents and a video purportedly from glove manufacturer W.A. Rubbermate that de Borbon then forwarded to Amazon. *Id.* ¶¶ 71, 73, 79. Marmosh also represented himself to Amazon as the corporate representative for another supposed manufacturer, VRG. *Id.* ¶ 88.

ORDER - 3

The financial relationship between the defendants is particularly relevant. Of Amazon's $10 million deposit, approximately $8 million was transferred from Paradigm to Karma, with $4 million transferred after June 29, 2020—the date when Defendants learned that conforming gloves could not be procured. *Id.* ¶¶ 138–143; Dkt. Nos. 77 ¶¶ 3, 19; 77-18 at 118, 122, 124; 77-2 at 222:3-6. Additionally, de Borbon transferred $2 million to Karma not from Paradigm's account but from an account of Goal Set Media, Inc., an entity he controlled. Dkt. Nos. 66 ¶ 123; 77 ¶¶ 18, 19; 77-17 at 729; 77-18 at 118; 77-1 at 118:24-119:22; 77-2 at 179:2-7, 201:25-202:5, 214:24-215:2, 215:11-216:6, 222:3-6.

The record also reveals other financial transactions between Defendants. On March 20, 2020, Paradigm wired $69,440 to the KishKindha Group, and Marmosh wired back $45,000 five days later. Dkt. Nos. 102 ¶ 4; 102-3 at 3. Marmosh identifies himself on LinkedIn as a co-owner of KishKindha Healthcare beginning April 2020. Dkt. No. 102-1 at 2–3. On December 4, 2020, months after the Amazon transaction failed, de Borbon wired $100,000 to Karma. Dkt. No. 77-18 at 16.

In his supplemental declaration, Marmosh explains that the wire to KishKindha occurred before he had an interest or involvement with the company and the March 2020 transfer he made to Paradigm was for an unrelated real estate transaction, Dkt. No. 104-1 ¶¶ 3–4; the $2 million wire was to facilitate the Amazon transaction with Karma using most of those funds to pay Brellaba LLC, for 40 million disposable gloves, *Id.* ¶ 6; and the December 2020 payment was for "an entirely unrelated business transaction, *Id.* ¶ 9. Marmosh also states he is suing Brellaba in Los Angeles Superior Court for fraud and breach of contract. *Id.* ¶ 6.

ORDER - 4

As of February 28, 2023, Paradigm's primary business checking account had a balance of only $199,178.74. Dkt. No. 66 ¶ 149.

### 3.  DISCUSSION

**3.1  Rule 12(b)(2) motion.**

Amazon bears the burden of proving that the Court has personal jurisdiction over Karma and Marmosh. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). On this procedural posture—when the court receives declarations and discovery materials after jurisdictional discovery—"a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Under this standard, the Court must take Amazon's uncontroverted allegations as true and resolve factual conflicts in Amazon's favor. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

A "court's exercise of personal jurisdiction over a nonresident defendant may be either general or specific." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). The parties do not contend the Court has general jurisdiction, so the Court will focus its analysis on the presence of specific jurisdiction.

**3.2  The Moving Defendants lack sufficient minimum contacts with Washington.**

The Ninth Circuit uses a three-part test to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (internal citation omitted).

Amazon bears the burden of satisfying the first two prongs of the test. *Id.* If it meets this requirement, the burden shifts to Karma and Marmosh to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

In its previous order denying the Individual Defendants' motion to dismiss, the Court concluded that Amazon failed to establish that the Individual Defendants "expressly aimed" their conduct at Washington as required under the effects test for purposeful direction. Dkt. No. 93 at 8–10.

Like the Individual Defendants, Moving Defendants lack sufficient contacts with Washington to establish traditional specific jurisdiction. Marmosh is a California resident who has never lived, worked, had bank accounts, or owned property in Washington. Dkt. No. 85-1 ¶ 8. Karma Family is a California LLC that has never conducted or solicited business in Washington. *Id.* ¶ 12. The Moving Defendants did not directly solicit, negotiate, or contract with Amazon in Washington. *Id.* ¶¶ 14–15. At most, Moving Defendants had knowledge that Amazon is headquartered in Washington. As the Court previously held, "[e]xpress

ORDER - 6

aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link between the defendant and the forum.'" Dkt. No. 93 at 9 (quoting *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021)).

Thus, the Court cannot find that Moving Defendants purposefully directed their activities at Washington under the traditional specific jurisdiction analysis.

### 3.3 Amazon has established a prima facie case for piercing the corporate veil.

Despite the lack of traditional minimum contacts, Amazon argues that the Court should impute Paradigm's jurisdictional contacts to the Moving Defendants under the alter ego doctrine. Dkt. No. 101 at 4. Moving Defendants dispute this theory, contending that they had no ownership interest in Paradigm, operated at arm's length, and conducted only legitimate business transactions. Dkt. Nos. 96 at 3; 104 at 3.

"To allege liability under the 'alter ego' doctrine, a plaintiff must show '(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exists, and [that] (2) that failure to disregard their separate identities would result in fraud or injustice.'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citing *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)). A plaintiff arguing that the alter ego doctrine applies must specifically allege both elements of the alter ego test, and facts supporting each element. *MH Pillars Ltd. v. Realini*, No. 15-CV-1383-PJH, 2017 WL 916414, at *12 (N.D. Cal. Mar. 8, 2017). The alter ego standard for alleging personal jurisdiction is

"lower" than the standard used for determining liability. *San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992). It is met if the "plaintiff makes a non-frivolous allegation that the defendant controlled a person liable." *Id.*

### 3.3.1   Amazon adequately alleges unity of interest between Moving Defendants and Paradigm.

Turning to the first factor—unity of interests—Amazon argues that Karma and Marmosh "commingled their funds in Paradigm's bank account and played a transactional shell game with Amazon's money," to which they then helped themselves. Dkt. No. 101 at 8. Amazon supports its argument by alleging that Paradigm was a "shell company" due to its inadequate capitalization, lack of employees, nonexistent office space, inability to generate material revenue, and minimal assets. Dkt. No. 66 ¶¶ 110–114. Amazon further alleges that Paradigm did not maintain adequate funds to reimburse its customers' deposits in case it could not provide conforming products. *Id.* ¶ 115. Indeed, the evidence shows that Paradigm transferred $8 million to Karma and de Borbon transferred another $2 million to facilitate the Amazon deal. This illustrates how de Borbon, Dandillaya, Karma, and Marmosh commingled funds with Paradigm and how they may have misappropriated Amazon's deposit for their own uses. Marmosh offers explanations for these transactions, but at this stage, the Court must resolve factual conflicts in Amazon's favor. *Harris Rutsky*, 328 F.3d at 1129.

Beyond the financial transactions, the timing is suspicious, as Marmosh formed Karma on April 16, 2020, and just three weeks later, on May 4, it contracted

with Paradigm to buy 120 million nitrile gloves—conveniently timed to fulfill Paradigm's commitment to Amazon. Dkt. No. 66 ¶¶ 15, 22, 59. This strongly suggests Karma was created specifically as a vehicle for the Amazon deal.

And the fact that Marmosh had preexisting business relationships with Paradigm's owners before the Amazon transaction undermines the Moving Defendants' claim that they were strangers to Paradigm operating at arm's length. Dkt. Nos. 96 at 3; 104 at 3.

These factual allegations and the supporting documents provide a sufficient basis to conclude that Amazon has stated a prima facie case that Karma and Marmosh share a unity of interest with Paradigm such that Paradigm may not really exist as a separate entity.

### 3.3.2  Fraud or injustice would result from respecting the corporate separateness.

As to the second factor—whether disregarding their separate entities would work an injustice—Amazon argues that Paradigm has almost no assets to satisfy a potential judgment against it because of its commingling with Karma and Marmosh. "[A]lthough insolvency 'does not of itself constitute an inequitable result,' '[c]ourts have found this prong satisfied when a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business.'" *Intelligent SCM, LLC v. Qannu PTY Ltd.*, No. CV-14-06417-MMM (VBKX), 2015 WL 13916820, at *21 (C.D. Cal. July 2, 2015) (quoting *Laborers Clean-Up Cont. Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 525 & n. 13 (9th Cir. 1984)); *City & Cnty. of San Francisco v. Purdue Pharma*

*L.P.*, 491 F. Supp. 3d 610, 635 (N.D. Cal. 2020) ("An inequitable result includes enabling a 'shell game.'"); *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432 (S.D. Cal. Aug. 24, 2010), at *7 ("Inequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability.").

Amazon alleges that Paradigm did not have enough capital to support the orders that it accepted and, as of February 28, 2023, Paradigm's primary business checking account had a balance of $199,178.74. Dkt. No. 66 ¶¶ 147–49. It also submitted evidence showing that most of its deposit were transferred out of Paradigm's account and into Karma's. This was done even though Paradigm knew it would be unable to provide conforming products. Dkt. No. 66 ¶¶ 138–143.

Moving Defendants argue that they are suing Brellaba LLC in California court for fraud and breach of contract. Dkt. No. 104-1 ¶ 6. But this litigation does not negate the inequity that would result from treating Moving Defendants as separate from Paradigm. Even if Moving Defendants prevail against Brellaba, there is no guarantee that recovered funds would be returned to Amazon.

Thus, the totality of the evidence establishes that respecting the corporate separateness of Moving Defendants would allow them to retain proceeds from the alleged fraudulent scheme while Paradigm remains judgment-proof. This would result in precisely the type of injustice the alter ego doctrine is designed to prevent.

### 3.3.3 Moving Defendants are alter egos of Paradigm for jurisdictional purposes.

Amazon has established a prima facie case that Karma and Marmosh are alter egos of Paradigm for purposes of personal jurisdiction. The Court attributes the contacts of Paradigm to Karma and Marmosh. Because it is uncontested that the Court has personal jurisdiction over Paradigm, it follows that it also has personal jurisdiction over Karma and Marmosh.

This conclusion is consistent with the Court's prior ruling regarding the Individual Defendants. Dkt. No. 93 at 13. Although Moving Defendants are technically distinct from Paradigm and the Individual Defendants—with Karma being a separate LLC and Marmosh being neither an owner nor officer of Paradigm—the evidence shows they functioned as part of a unified enterprise for purposes of the Amazon transaction.

The Court notes that this finding is limited to the jurisdictional inquiry only. At trial, Amazon will bear the burden of proving alter ego liability by a preponderance of the evidence. *See Data Disc*, 557 F.2d at 1285.

### 4. CONCLUSION

In sum, the Court DENIES Moving Defendants' Motion to Dismiss for lack of personal jurisdiction. Dkt. No. 96.

Dated this 31st day of March, 2025.

Jamal N. Whitehead
United States District Judge